**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Lillian Franklin

**LAW OFFICES OF DOUGLAS J. CAMPION, APC**
Douglas J. Campion, Esq. (75381)
doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2001
Facsimile: (619) 858-0034

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LILLIAN FRANKLIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.,**<br><br>Defendant. | **Case No.:** 14-cv-2349 MMA (BGS)<br><br>**PLAINTIFF LILLIAN FRANKLIN'S REPLY TO OBJECTIONS OF JEFFREY THUT; CHARMAIN T. SCHUH; DOUGLAS KAYE; DANIEL DARNELL; AND, ANNE L. CARD**<br><br>**DATE:** August 3, 2015<br>**TIME:** 2:30 p.m.<br>**COURTROOM:** 3A<br><br>**HON. MICHAEL M. ANELLO** |

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION .......................................................................1

II.  ARGUMENT ...........................................................................1

   A. THE CLASS MEMBERS OVERWHELMINGLY SUPPORT THE SETTLEMENT .....2

   B. DARNELL; AND, KAYE'S GENERAL AND PHILOSOPHICAL OBJECTIONS TO THE CLASS SETTLEMENT DO NOT IMPEDE FINAL APPROVAL ....................3

   C. THE PROFESSIONAL OBJECTORS' BOILERPLATE OBJECTIONS ARE MERITLESS ...............................................................................6

      1. *The Objection of C. Jeffrey Thut lodged by Timothy R. Hanigan; and, Christopher Bandas adds nothing of value to the current class and should be disregarded by this Court* ...................................7

         a. Class Counsel properly seeks the 25% benchmark based upon the entire Settlement Fund .........................................7

         b. Class Counsel seeks a percentage fee, but if the Court uses the lodestar as a cross check, the multiplier is reasonable in light of the expeditious result achieved by Class Counsel ...................10

      2. *The Objection of Charmain T. Schuh lodged by Steve A. Miller; John C. Kress; and, Jonathan E. Fortman adds nothing of value to the current class and should be disregarded by this Court* ........................7

         a. Class Counsel properly seeks the 25% benchmark based upon the entire Settlement Fund .........................................10

         b. The cash payment to the Class Members is reasonable given the strengths and weaknesses of the Parties' respective claims and defenses ..............................................................11

         c. This case does not represent a "Reverse Auction" ..................11

         d. There is no "Clear Sailing" Provision in this Settlement .........12

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

e. The *Cy Pres* clause is appropriate ...........................................13

3. *The Objection of Anne L. Card adds nothing of value to the current class and should be disregarded by this Court* ...................................14

a. The scope of the release is not overbroad ................................15

b. Objector Card's other objections are likewise without merit ...16

III.   CONCLUSION ...........................................................................18

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF AUTHORITIES

**CASES**                                                               **PAGE(S)**

*Allapattah Servs., Inc. v. Exxon Corp.*,
 454 F. Supp. 2d 1185 (2006) ......................................................8

*AT&T Mobility v. Concepcion*,
 131 S. Ct. 1740 (2011) .............................................................4

*Bert v. AK Steel Corp.*,
 2008 WL 4693747 (S.D. Ohio 2008) .......................................5

*Bryan v. Pittsburgh Plate Class Co.*,
 494 F.2d 799 (3d Cir. 1975) ................................................2, 3

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ................................................4

*Craft v. County of San Bernardino*,
 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...................................9

*Dennis v. Kellogg Co.*,
 2010 WL 4285011 (S.D. Cal. 2010) ....................................5, 14

*Domonsoke v. Bank of Am., N.A.*,
 790 F. Supp. 2d 466 (2011) ....................................................3

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15 (N.D. Cal. 1980) .............................................1, 3

*Glass v. UBS Fin. Servs. Inc.*,
 331 Fed. Appx. 452 (9th Cir. 2009) .........................................8

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ..............................................1, 3

*In re Aetna, Inc. Sec. Litig.*,
 913 F.2d 576 (9th Cir. 1990) ..................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 281 F.R.D. 531 (N.D. Cal. 2012) .........................................6, 7

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
    176 F. Supp. 2d 758 (2001) ............................................................5

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .........................................................2

*In re Merry-Go-Round Enterprises, Inc.,*
    244 B.R. 327 (2000) ........................................................................9

*In re Relefen Antitrust Litig.,*
    231 F.R.D. 52 (2005) ......................................................................3

*In re Rite Aid Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) ......................................................3, 9

*In re Skilled Healthcare Gp. Inc. Securities Litig.,*
    2011 U.S. Dist. LEXIS 10139 (C.D. Cal. 2011) ..........................4

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.,*
    2013 U.S. Dist. LEXIS 123298 (C.D. Cal. 2013) .....................4, 9

*In re UnitedHealth Group, Inc.,*
    643 F. Supp. 2d 1100 (2005) .........................................................6

*In re Visa Check/Mastermoney Antitrust Litig.,*
    297 F. Supp. 2d 503 (2003) ...........................................................2

*Lane v. Facebook, Inc.,*
    663 F.3d 811 (9th Cir. 2012) ......................................................14

*Larson v. Sprint Nextel Corp.,*
    2010 WL 239934 (D.N.J. 2010) ...................................................5

*Lobatz v. U.S. West Cellular of California, Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ......................................................2

*Milliron v. T-Mobile USA, Inc.,*
    2009 WL 3345762 (D.N.J. 2009) ...............................................12

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ....................................................................13

*Moore v. City of San Jose*,
    615 F.2d 1265 (9th Cir. 1980) .....................................................................2

*Morris v. Lifescan, Inc.*,
    54 Fed. Appx. 663 (9th Cir. 2003) ..............................................................8

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ...................................................................14

*O'Brien v. Brain Research Labs. LLC*,
    2012 WL 3242365 (D.N.J. 2012)............................................................3, 4

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (2003)...................................................................................6

*Redman v. Radioshack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ......................................................................8

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    2010 WL 2486346 (C.D. Cal. 2010) ..........................................................5

*Smith v. CRST Van Expedited, Inc.*,
    2012 U.S. Dist. LEXIS 165913 (S.D. Cal. 2012).......................................4

*Staton v. Boeing Co.*,
    327 F.3d 989 (9th Cir. 2003) ...................................................................7, 8

*Steel Co. v, Citizens for a Better Environment*,
    523 U.S. 83 (1998) ........................................................................................2

*Steiner v. Am. Broad Co.*,
    248 F. App'x 780 (9th Cir. 2007) ...............................................................9

*TBK Partners, Ltd. v. V. W. Union Corp*,
    675 F.2d 456 (2d Cir. 1982) .......................................................................3

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .........................................................................3

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. State of Oregon*,
    913 F.2d 576 (9th Cir. 1990) .......................................................................2

*Van Vranken v. Alt. Ritchfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995).........................................................9

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................8, 9

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................2

*Williams v. General Elec. Capital Auto Lease*,
    1995 WL 765266 ................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZEROUNI LAW GROUP, APC**
**245 FISCHER AVENUE, UNIT D1**
**COSTA MESA, CA 92626**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# I. INTRODUCTION

This settlement was overwhelmingly approved by the Class. Out of 4,076,207 persons in the Class, only **eight** submitted an objection to the strong settlement achieved by class counsel.[1] Thereafter, three of these eight objectors withdrew their objections resulting in only four remaining objections. These five consumers represent a miniscule .00009% of the Class, which is a powerful indication that the settlement is fair, reasonable, adequate and deserves final approval.

As discussed below, all but one of the objections currently pending before this Court have been submitted by "professional objectors" asserting meritless arguments regarding the amount of attorneys' fees for Class Counsel, the settlement value being too low, and issues with the *cy pres* aspect of the Settlement Agreement. However, given the nature of this Settlement, the relief it provides, the scope of notice, and the overwhelmingly positive response of the Class, none of these objections should deprive the Class Members of the benefits owed pursuant to the Settlement. Such objections, when compared to the settlement achieved by class counsel, and in light of the significant obstacles they would have faced if the case had proceeded to class certification and trial, should be accorded no weight by this Court and should be rejected in their entirety.

## II. ARGUMENT

The Ninth Circuit has long recognized that since a "[class action settlement] is the offspring of compromise, the question is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). With

---

[1] The average number of objections to settlements of a consumer class action is 233. *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529 (2004).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

regard to substantive objections, objectors bear the burden of proof as to any claim which challenges the reasonableness of a settlement.  *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) citing to *Moore v. City of San Jose*, 615 F.2d 1265, 1272 (9th Cir. 1980) ("In this Circuit, we have usually imposed the burden on the party objecting to a class action settlement."); *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103-104 (1998); and, Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.643 (2004).  Thus, Class Counsel respectfully requests this Court overrule the remaining objections in ruling upon Class Counsel's Motion for Final Approval because (A) the Class Members overwhelmingly support the Settlement; (B) Darnell and Kaye's general and philosophical objections to the settlement do not impede final approval; and, (C) the professional objectors' boilerplate objections are meritless.

### A. THE CLASS MEMBERS OVERWHELMINGLY SUPPORT THE SETTLEMENT.

The response of the Settlement Class was overwhelmingly in favor of the Settlement.  Even in a strong settlement:

> a certain number of objections are to be expected in a class action with an extensive notice campaign sent to a large number of class members.  If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003).

Various Courts, including the Ninth Circuit, have similarly held that receipt of merely a small number of objections supports a grant of final approval.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objections supporting finding that settlement was fair); *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (18 objections out of five million class members is evidence of "overwhelming [] approval"); *Bryan v. Pittsburgh Plate Class Co.*, 494 F.2d 799, 803-804 (3d Cir. 1975) (approving class settlement

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

even though 20% of class objected); *TBK Partners, Ltd. v. V. W. Union Corp*, 675 F.2d 456, 458 (2d Cir. 1982) (approving settlement despite objections of approximately 56% of class); and, *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (approving settlement over objections of approximately 50% of class).

Here, an infinitesimal number of consumers, .00009%, have objected to the Class Settlement, and the number is even smaller once the objections lodged by "professional objectors" have been rejected, as discussed below. Such a small number of objectors, in conjunction with the fact that more than one hundred thousand consumers approved of the settlement enough to go to the trouble to make a claim is further support for the fact that the Class Settlement is adamantly approved by the class. Thus, Class Counsel respectfully requests this Court grant Final Approval of the Parties' Class Action Settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993); *In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that district court did not abuse its discretion by finding that the absence of substantial objections by class members to the fee request weighs in favor of approval); and, *In re Relefen Antitrust Litig.*, 231 F.R.D. 52, 79 (2005) (approving fee request despite four objections).

### B. DARNELL; AND, KAYE'S GENERAL AND PHILOSOPHICAL OBJECTIONS TO THE SETTLEMENT DO NOT IMPEDE FINAL APPROVAL.

Generalized objections, such as Darnell and Kaye's, asserting that a settlement could have been "better" or "different" have little or no bearing on the Rule 23 analysis. *See Hanlon*, 150 F.3d at 1027. Such "philosophical" objections are inevitable in large class actions and thus are not considered to "impugn the adequacy of the settlement itself." *Domonsoke v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 474 (W.D.Va. 2011) (in class of three million, "most of the 59 objections show a philosophical disagreement with class action litigation, a general disagreement with this litigation in particular, or dissatisfaction with class counsel's requested attorney's fees."); *O'Brien v. Brain Research Labs, LLC*,

2012 WL 3242365, at *25 (D.N.J. 2012) (discounting statement which "embodies the objector's personal views about class action litigation generally [specifically that the 'only group that makes a large profit are the lawyers representing the plaintiff groups'] and is not addressed to the specifics of this settlement").

Here, Class Counsel provided significant explanation to support the amount of the settlement obtained herein.  While "[Kaye] believe[s] the settlement amount is low and does not discourage future violations by Wells Fargo…", Kaye fails to take into consideration the significant defenses potentially available to Defendant. Similarly, Darnell stated that the "attorneys' fees are extravagant."  Said positions merely constitute unsupported speculation on behalf of Kaye and Darnell which should not be considered by the Court.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *310-311 (C.D. Cal. 2013) (unsupported allegations regarding value when objectors had provided no evidence of their own is not a basis for granting objections).[2]

As discussed in the Preliminary Approval Motion, Defendant identified a number of strong defenses to class certification.  [ECF No. 5, 13:4-21].  They include: (1) arbitration clauses with class action waivers included in Defendant's contract may well have precluded litigation and the opportunity to participate in class actions pursuant to United States Supreme Court authority in *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011); (2) issues of prior express consent may

---

[2] This Court, and other California District Courts, have routinely rejected unsupported objections as a matter of course.  *See, e.g., Smith v. CRST Van Expedited, Inc.*, 2012 U.S. Dist. LEXIS 165913 (S.D. Cal. 2012) (rejecting objector who "ma[de] no showing of what would be sufficient or why" and noting that "such unsupported objections cannot justify denial or approval"); *In re Skilled Healthcare Gp., Inc. Securities Litig.*, 2011 U.S. Dist. LEXIS 10139 (C.D. Cal. 2011) (rejecting "a lone objection unsupported by specific facts"); and, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 20 (N.D. Cal. 1980) (holding an objection invalid because it did "not specify what amount would fairly, adequately, and reasonably settle his monetary claims.  Nor does he state on what grounds he deserves a larger share of the settlement funds. This Court thus finds it impossible to respond to his objection in any way other than dismissing it for lack of support.").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

have negated Defendant's alleged violation and/or constitute individual issues contrary to class adjudication; (3) lack of usage of an automatic telephone dialing system; and, (4) Defendant's counterclaims or offset may have posed additional individualized inquiries. [*Id.*].  Based upon these arguments, the Honorable Irma E. Gonzales (Ret.) of JAMS assisted Class Counsel in reaching a settlement that took into account the strengths and weaknesses of the Parties' claims and defenses.  Thus, the settlement is entitled to a presumption of fairness since said settlement was only achieved following non-collusive negotiations before a neutral third-party.  *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380; *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive (emphasis added)"; *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 *McLaughlin on Class Actions* § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added)."); and *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) ("[T]he parties engaged in a full-day mediation session" followed by further settlement negotiations, thus establishing that the proposed settlement was noncollusive.).

Thus, Plaintiff requests this Court overrule Darnell and Kaye's objections

///

### C. The Professional Objectors' Boilerplate Objections Are Meritless.

Federal Rule of Civil Procedure 23 affords class members the opportunity to present objections to the terms of a class action settlement that affects their interests, and in many instances, objectors can, and do, play a valuable adversarial role when it comes to testing the fairness, reasonableness and adequacy of proposed class action settlements.  However, an unfortunate byproduct of this settlement, like many other large settlements, is that it attracts "professional objectors" who "routinely represent[] objectors purporting to challenge class action settlements…not to effectuate changes to settlements, but…for [personal financial gain.]"  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533; and, *In re UnitedHealth Group, Inc.*, 643 F. Supp. 2d at 1109 (explaining that professional objectors' "goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement").

The conduct and cost of professional objectors is well documented by the federal courts.  "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost:  Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 553 n.3; *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1361, n. 30 (2011); *In re UnitedHealth Group PSLRA Litig.*, 634 F. Supp. 2d at 1108-09 ("The remoras are loose again."); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n. 26 (2003) (observing that "Federal Courts are increasingly weary of professional objectors.").

As referenced herein, the objections lodged on behalf of (1) C. Jeffrey Thut; (2) Charmain T. Schuh; and, (3) Anne L. Card have been lodged via attorneys that have been repeatedly reprimanded by various Federal Courts.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### 1. *The Objection of C. Jeffrey Thut lodged by Timothy R. Hanigan; and Christopher Bandas adds nothing of value to the current class and should be disregarded by this Court.*

As an initial matter, numerous courts have repeatedly determined that both Mr. Hanigan and Mr. Bandas have made a career as professional objectors to class action settlements. *See e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531 (N.D. Cal. 2012) ("Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees"…[Bandas' and his clients'] attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the Class and/or Class Counsel."); and, Order Striking Objections Due to Objectors' Lack of Standing, *In re Hydroxycut Mktg. and Sales Prac. Litig.*, 09-md-2087 BTM (KSC) (S.D. Cal. 2009) attached hereto as Exhibit A (describing a case in which Mr. Bandas represented an objector, setting the price to withdraw his objection at $400,000.00).

Here, Hanigan and Bandas argue that (a) Class Counsel's percentage of recovery for attorneys' fees should not include notice costs in the denominator; and, (b) Class Counsel's multiplier is too high.

### a. Class Counsel properly seeks the 25% benchmark based upon the entire Settlement Fund.

Hanigan and Bandas blithely assert, without any Ninth Circuit support, that it is improper for Class Counsel to request 25% of the Settlement Fund in which the denominator includes notice costs.  This position ignores that without proper notice as required by the Federal Rules of Civil Procedure, the Class Members never would have been informed of the current class settlement.  In addition, the Ninth Circuit has repeatedly held that the valuation of the total fund to calculate this percentage reasonably includes the notice and administration costs, which were part of the benefit obtained for the class. *See Staton v. Boeing Co.*, 327 F.3d

938 (9th Cir. 2003).[3]  It is true that the Seventh Circuit has taken a different approach from that of the Ninth Circuit.  *See, e.g, Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (holding that administrative and other notice costs may not be considered in calculating attorney's fees).  However, that is not the law of this Circuit, and Class Counsel submits that it does not reflect the best view of the question.

Moreover, this Court should reward Class Counsel for achieving such a good result quickly.  In *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (2006), the Court held that decreasing a fee percentage solely in light of a large settlement is "antithetical" to the percentage of the recovery method:

> the whole purpose of which is to align the interests of Class Counsel and the Class by rewarding counsel in proportion to the result obtained.  By not rewarding Class Counsel for the additional work necessary to achieve a better outcome for the class, the sliding scale approach creates the perverse incentive for Class Counsel to settle too early for too little.

*Id*. at 1213; *see also Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266, at *10 (1995) (same).

Given the Ninth Circuit authority directly contradicting Hanigan and Bandas' position, this Court should reject this argument in ruling upon Class Counsel's Final Approval Motion; and, Motion for Attorneys' Fees and Costs.

**b.  Class Counsel seeks a percentage fee, but if the Court uses the lodestar as a cross check, the multiplier is reasonable in light of the expeditious result achieved by class counsel.**

Here, Class Counsel seek to be paid their fees as a percentage of the common fund of cash, because that method best aligns the interest of class Counsel with those of the Class as a whole.  However, if the Court were to use the lodetar as a

---

[3] *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th Cir. 2003) (affirming fee award of 33% of total settlement fund); and, *Glass v. UBS Fin. Servs. Inc.*, 331 Fed. Appx. 452 (9th Cir. 2009) (noting that district court's calculation of 25% of total settlement fund rather than 25% of amount actually collected by the class was proper and in line with Ninth Circuit precedent).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

cross check on the fee request, a multiplier of approximately 3.6[4] is eminently reasonable here.  [*See* Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award, ECF No. 20-1, 2:12-16].

"The Ninth Circuit has noted that multipliers range from 1.0 – 4.0 and a 'bare majority' fall within the range of 1.5 – 3.0."   *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *297 (C.D. Cal. 2013); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming district courts use of a 3.65 multiplier); *Van Vranken v. Alt. Ritchfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3 – 4 range are common in lodestar awards" for complex class actions).[5]   Here, Hanigan and Bandas cite no evidence or legal authority to establish that Class Counsel's requested multiplier is inappropriate.   Thus, Mr. Thut's baseless objection should be disregarded in ruling upon Plaintiff's Final Approval Motion.

///

///

///

///

---

[4] Class Counsel has been required to incur a significant amount of attorneys' fees and costs not previously included in their lodestar calculation since filing Plaintiff's Motion for Fees.  The increase in hours, which results in a reduction of Class Counsel's multiplier, was required to prepare the current Reply; prepare the Motion for Final Approval; investigate objections; conduct out-of-state depositions regarding these objections; and oversee the notice process.  As a result, Class Counsel's multiplier is now even lower than 3.6, rendering their request even more reasonable.

[5] *See also Steiner v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving multiplier of approximately 6.85); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) (approving multiplier of approximately 5.20); *In re Telik, Inc., Securities Litig.*, 576 F. Supp. 2d 570, 590 (2008) ("multipliers of over 4 are routinely awarded by Courts"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (2001) (multiplier of 4.5 – 8.5 reasonable); *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (2000) (multiplier of 19.6 reasonable); *In re Aetna, Inc. Sec. Litig.*, 2001 WL 20928 (2001) (multiplier of 3.6 reasonable); and, *Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) (multiplier of 3.6 reasonable).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### 2. *The Objection of Charmain T. Schuh lodged by Steve A. Miller; John C. Kress; and, Jonathan E. Fortman adds nothing of value to the current class and should be disregarded by this Court.*

Miller and his co-counsel are serial objectors who also make a living filing objections to class action settlements based upon nearly identical arguments. *See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL No. 1532, DE # 1175 at n.22 (2011) (rejecting Mr. Miller's "specious" arguments); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-08141-DAB, DE # 663, 664 (2012) (Miller withdrew his appeal of an order rejecting his objections to a settlement, without having provided any benefit to class). In fact, Kress has previously been sanctioned by a Court on at least one occasion for lodging a meritless objection. *See Hale v. Wal-Mart Stores*, No. 01CV218710 (Mo. Cir. Ct. June 17, 2009). Attached hereto as Exhibits B-D are summaries of numerous class action settlements that were objected to by Miller; Kress; and, Fortman wherein the objections were raised and overruled by the Court with judicial criticism.[6]

With regard to Ms. Schuh's objections, Ms. Schuh offers similar philosophical objection discussed above for Mr. Kaye. Specifically, Ms. Schuh states that (a) Class Counsel's fees are too high; (b) the Class Members will receive too little; and, (c) the *cy pres* is inappropriate. [*See* ECF No. 31].

### a. Class Counsel properly seeks the 25% benchmark based upon the entire Settlement Fund.

Like Hanigan and Bandas, Ms. Schuh argues in an identical manner that Class Counsel's fee should not be assessed based upon notice costs since "notice to the class is not a 'benefit.' [*Id.* at page 3]. Without notice provided in compliance with Rule 23, the more than 100,000 class members that submitted valid claims would be receiving no recourse against Defendant for the allegedly illegal telephone calls at issue in this action. How these consumers are not

---

[6] Exhibits B-D were previously lodged as Exhibits in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 3:07-MD-1827 SI (N.D. Cal. May 4, 2012), ECF No. 5601.

benefitted by the receipt of the required notice is difficult to discern.

Regardless, Ms. Schuh's position as set forth by her attorneys is contrary to Ninth Circuit authority.

### b. <u>The cash payment to the Class Members is reasonable given the strengths and weaknesses of the Parties' respective claims and defenses.</u>

Next, Ms. Schuh, without any supporting evidence, posits that "the recovery is unlikely to exceed anything more than a few dollars per person..." [Schuh Objection at page 5]. This is completely wrong. In fact, each claimant will receive at least $69 from this settlement, if it is approved. [*See* Declaration of ILYM Group, Inc.]. Although this is less than what Class members would have received had the Class been certified, prevailed at trial, and then on appeal, it is favorable when compared to most TCPA class action settlements. Ms. Schuh's position lacks merit and should be disregarded.

### c. <u>This case does not represent a "Reverse Auction".</u>

Ms. Schuh mysteriously asserts that this case represents a "reverse auction." A reverse auction is a situation in which different groups of plaintiff's counsel have brought cases against the same defendant, and the defendant (perhaps implicitly) allows those groups to compete against themselves to achieve the most favorable settlement *for the defendant*. Reverse auctions are a serious violation of the duty of loyalty that class counsel have toward their clients.

No reverse auction occurred here. In this case, various groups of plaintiff's counsel brought a sequential series of cases against Wells Fargo. *See, e.g.* Declaration of Daniel Hutchinson (Dkt. No. 20-7), at ¶¶ 20-46. The cumulative effect of those cases positioned the present action to be successful. Rather than plaintiff's counsel competing against each other, as is the case in a reverse auction, here plaintiffs' counsel cooperated and built on each other's activities to reach the desired result.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

For this reason, the fact that this case settled quickly after filing must be seen in the broader context of Class Counsel's TCPA litigation against Wells Fargo. In isolation, a case in which the parties settle immediately after filing might raise concerns. But seen in the context of over four years of litigation against Wells Fargo, those concerns are mitigated. Given the previous course of litigation, Wells Fargo – and Class Counsel – was well aware of the contours of the case, the strength of Wells Fargo's defenses, and the size of the class from the moment this case was filed. Discovery and case investigation that would ordinarily take months or years was in essence already accomplished by the time this particular case was first filed.[7]

Nothing in the conduct of this litigation suggests a "reverse auction" or other impropriety. The objection should be overruled.

### d. There is no "Clear Sailing" Provision in this Settlement.

Ms. Schuh is equally mistaken when she claims that the settlement in this case involves a "clear sailing" provision. As the Ninth Circuit articulated on *In re Bluetooth Headset Products Liability Litigaiton*, cited by objectors, a "clear sailing agreement" is one which "provid[es] for the payment of attorneys' fees separate and apart from class funds." 654 F.3d 935, 947 (9th Cir. 2011). Such agreements may be problematic because they have "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id.* (quoting *Lobatz v. U.S. West Cellular of California, Inc.,* 222 F.3d 1142, 1148 (9th Cir. 2000) (internal quotation marks omitted)). A slightly different, but related, problem occurs where "the parties arrange for fees not awarded to revert to defendants rather than be

---

[7] For this reason, contrary to the assertion of Ms. Schuh, it is entirely appropriate for the Court to consider the efforts of class counsel stemming from the previous iterations of the case against Wells Fargo. Absent that litigation, it would not have been possible to achieve this result for class members, and certainly not in the timeframe that occurred here. At a minimum, without the previous litigation, a similar amount of work by class counsel (and a similar amount of lodestar), would have to have been undertaken by class counsel in this case.

added to the class fund." *Id.* (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)).

As discussed above, class counsel here seek a percentage of the non-reversionary common fund of cash, not a separate pot of money from Wells Fargo. Thus, there is not, and cannot be, a "clear sailing" provision in this settlement. It is true that the settlement calls for Wells Fargo not to object to class counsel's fee request up to a specified percentage. But that is not a "clear sailing" agreement of the type identified by the Court in *Bluetooth*, because it does not carry with it the potential for a conflict of interest between class counsel and their clients. In a true "clear sailing" scenario, class counsel may seek (or defendants might offer) higher compensation for class counsel in return for lower compensation for the class. Here, because the settlement was structured in terms of a common fund with a percentage fee for class counsel, a better result for class members (i.e. a larger common fund) would result greater potential attorneys' fees for class counsel. The interests of class counsel and the class members are thus aligned, and there is thus no reason to believe that the settlement is tainted by improper collusion.

The objectors are simply mistaken regarding the definition of, and problems resulting from, clear sailing agreements. There is no clear sailing agreement in this case. As such, this objection should be overruled.

### e. The *Cy Pres* clause is appropriate.

Finally, Ms. Schuh challenges the potential for a *cy pres* recipient. As discussed in Class Counsel's Preliminary Approval Motion, "the Settlement Fund is an 'all-in' fund and is not reversionary which means that each...class member[] making [a claim] will receive a *pro rata* share..." [*See* Preliminary Approval Motion, 3:20-24]. Ideally, every consumer who submits a valid claim will receive a cash payment; however, in every class settlement there are always checks that go uncashed for unknown reasons. The Settlement agreement contemplates a

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

redistribution to claiming class members if the amount of unclaimed funds is greater than $50,000. Below that threshold, a redistribution makes no practical sense—it would cost more to print and mail the checks than the class members would receive in the second distribution. Thus, without a cy pres recipient, the only option would be to return these funds to Defendant, which in turn would lower the amount of the settlement.

The *cy pres* recipient will be related to protecting the consumer privacy interests that are intended to be protected by the TCPA pursuant to *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012). Moreover, in *Lane v. Facebook*, the Ninth Circuit explained that *cy pres* distributions are an appropriate relief mechanism where said distributions "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the objectives of the underlying statutes, and the interests of the silent class members." *Lane v. Facebook, Inc.*, 663 F.3d 811, 821 (9th Cir. 2012) citing to *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). Class Counsel asserts that payment to a *cy pres* recipient of this small amount of unclaimed funds furthers the goals of this class action litigation by ensuring that the class members, or entities acting to further the class members' interest, rather than the defendant, receive the maximum possible benefit.

### 3. *The Objection of Anne L. Card adds nothing of value to the current class and should be disregarded by this Court.*

Ms. Card, like the others, has repeatedly made baseless objections to class action settlements. For example, Ms. Card lodged a nearly identical objection in *Couser v. Comenity Bank*, 12-cv-2484 MMA (BGS) (S.D. Cal. February 9, 2015), ECF No. 71, that was withdrawn shortly thereafter. Here, Ms. Card's objections regarding the settlement amount, attorneys' fees, and the *cy pres* distribution should be rejected for the reasons discussed above. The remaining objections based upon the Release and Notice are equally meritless, as discussed below.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### a.   The scope of the release is not overbroad

Objector Card argues that the release is overbroad.   Objector Card's argument has two parts.   First, she argues that the release is not limited in time.   As such, according to Objector Card, "the Release would bar a Class Member from raising a claim against Defendant for a new violation of the TCPA even if the violation occurs after final approval."   This is incorrect.   The release covers "any and all claims. . . as of the date of the Final Approval Order."   [Settlement Agreement, § 16.02(A)].   To the extent Wells Fargo makes any calls to anyone, including class members, *after* the date on which final approval is granted, such claims are not released by this settlement.   Similarly, to the extent a class member opens a new credit card account after Final Approval, any calls regarding that account would necessarily be made after final approval, and would thus not be covered.[8]   Ms. Card's objection along these lines is thus utterly frivolous.

Objector Card also argues that the release would bar claims under the Fair Debt Collection Practices Act (FDCPA).   Again, this is incorrect.   The release covers claims:

> that arise out of or relate in any way to the Released Parties' use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" to contact or attempt to   contact Settlement Class Members in connection with a Consumer Credit Card Account . . . including, but not limited to, claims under or for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and any other statutory or common law claim *arising     from   the   use   of   automatic   telephone   dialing systems and/or an artificial    or    prerecorded voice to call cellular telephones, or pagers.*

Settlement Agreement, § 16.02(A) (emphasis added).   In other words, the Released Claims are those claims that arise out of the use of the use of the

---

[8] Objector Card asserts that "the Release isn't limited to Credit Card Accounts held during the Class Period and extends to Accounts held before the Class Period . . . ."  To the extent Objector Card is objecting to releasing claims stemming from calls made prior to November 1, 2009, Plaintiffs would note that claims deriving from such calls are already barred by the four year statute of limitations on TCPA claims.

automatic dialing system *itself*; it does not include claims stemming from calls that happen to have been made by an automatic dialing system, but have some other basis for liability.  As an example, the FDCPA bans all communications with a debtor after 9 p.m. local time.  15 U.S.C. § 1692c (a)(1).  While it is certainly possible that a call made after 9 p.m. could me made with an automatic dialer, a claim under the FDCPA stemming from such a call would not "arise from the use of automatic telephone dialing systems," but instead arise from the fact that the call was made after 9 p.m.  As such, a hypothetical FDCPA claim stemming from a call made by Wells Fargo after 9 p.m. would not be released by this settlement, regardless of whether the call was made with an automated dialer.

For these reasons, Objector Card's objection regarding the scope of the release should be overruled.

### b.  Objector Card's other objections are likewise without merit.

Objector Card argues that the settlement in this case provides a smaller payment to class members than other settlements achieved in other TCPA cases.  As discussed above, this objection is improper on its face, since a mere "you should have done better," without more, is not a cognizable objection.  Moreover, Objector Card's claim is factually incorrect, since this Settlement is in line with— or exceeds—many other TCPA case settlements.  *See, e.g., In re Capital One Telephone Consumer Protection Act Litig.,* ___ F. Supp.3d ___, 2015 WL 605203, at * 19 (N.D.Ill. Feb. 12, 2015) (approving "a payment to each timely claimant of at least $39.66"; *Connor v. JPMorgan Chase Bank,* No. 3:10-cv-1284, Dkt. No. 122-1, at 1 (S.D.Cal. Sept. 30, 2014) ("Every approved claim will be paid approximately $69.97."); *Benzion v. Vivint, Inc.,* No. 0:12-cv-61826, Dkt. No. 186, at 2 (S.D.Fla. Aug. 4, 2014) ("it is estimated that the Class Members will receive between $55-$60 each"); *Bellows v. NCO Fin. Sys.,* No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *12 (S.D. Cal. Dec. 2, 2008) (class

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

members received $70 each).[9]

Objector Card argues that the requirement that class members seeking to object to the settlement must submit written objections to "five different addresses" is overly burdensome. Pursuant to the Settlement Agreement, "[a]ny Class Members who wish to exclude themselves from the Settlement Class ("opt out") must advise the Claims Administrator in writing of that intent, and their opt out request must be postmarked no later than the Opt-Out Deadline." [Settlement Agreement, ¶ 12.01]. Thereafter, the Claims Administrator is required to forward any objections received to Class Counsel. [*Id.*]. As such, it is clear that Ms. Card's interpretation of the Settlement Agreement is, once again, completely wrong.

Finally, Objector Card argues that the requested service awards to the Class Representatives in the amount of $1,500 each are excessive. In fact, the requested award is less than the service award amounts approved in numerous other TCPA and other class action settlements. *See, e.g., Satterfield v. Simon & Schuster, Inc. et al.*, No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (awarding $20,000 to one named plaintiff and $5,000 each to the other two named plaintiffs); *AllianceOne,* No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (awarding $5,000 to one named plaintiff, and $2,500 each to the other two named plaintiffs); *Grannan v. Alliant Law Group, P.C.,* No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *23 (N.D. Cal. Jan. 24, 2012) (awarding $5,000 incentive payment); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR, 2012 U.S. Dist. LEXIS 132061, at *6 (W.D. Wash. Sept. 17, 2012) (awarding $2,500 to each of the class

---

[9] Card cites *Hageman v. AT&T Corp.,* No. 1:13-cv-00050 (D.Mont.). *Hageman,* while unquestionably an excellent result for the class, is an outlier among TCPA settlements because the class was defined to include only *non-customers* of AT&T who received automated calls. Thus, AT&T lacked all of the consent defenses normally present in TCPA cases involving customers (such as the present case). Quite simply, the plaintiff and every class member in *Hageman* had a much stronger case than in most TCPA cases, and the settlement value reflected that strength. Plaintiff would submit that the other TCPA cases cited above are apples-to-apples comparisons with this case in a way that *Hageman* simply is not.

representatives).  The requested award is modest and will not only compensate the Class Representative for the effort she undertook in these cases, but also will encourage other individuals to undertake the responsibility and risk of litigating class actions.  This objection should therefore be overruled.

## III.   CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully requests this Court disregard each of the objections discussed herein when ruling upon Plaintiff's Motion for Final Approval.

Dated: July 20, 2015                              Respectfully submitted,


                                        KAZEROUNI LAW GROUP, APC

                                        By:   ___/s/ Abbas Kazerounian___
                                               ABBAS KAZEROUNIAN, ESQ.
                                               ATTORNEY FOR PLAINTIFF


                                        HYDE & SWIGART

                                        By:   ___/s/ Joshua B. Swigart___
                                               JOSHUA B. SWIGART, ESQ.

                                        LAW OFFICES OF DOUGLAS J. CAMPION, APC

                                        By:   ___/s/ Douglas J. Campion___
                                               DOUGLAS J. CAMPION, ESQ.
                                        ATTORNEYS FOR PLAINTIFF, LILLIAN FRANKLIN