UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LILLIAN FRANKLIN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WELLS FARGO BANK, N.A.,

Defendant.

Case No.:  14cv2349-MMA (BGS)

**ORDER:**

**GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**

[Doc. No. 37]

**GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

[Doc. No. 20]

Plaintiff Lillian Franklin, on behalf of herself and all others similarly situated, moves for final approval of class action settlement and for attorneys' fees, costs, and an incentive award.  Doc. Nos. 20, 37.  The Court held a final approval hearing on the matter pursuant to Federal Rule of Civil Procedure 23(e)(2).  Doc. No. 43.  For the reasons set forth below, the Court **GRANTS** the motion for final approval of the settlement and the motion for attorneys' fees, costs, and a class representative incentive award.

//

//

//

<u>**BACKGROUND**</u>

**I.    Factual Background**

Plaintiff brings this action against Defendant Wells Fargo Bank, N.A. for damages and injunctive relief based on Defendant's negligent, knowing and/or willful contacting of Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* Doc. No. 1 at ¶ 1. Plaintiff alleges Defendant used an automatic telephone dialing system to place calls to Plaintiff that were intended for the collection of a past-due credit card account of a deceased individual, and that Plaintiff incurred charges for the calls. *Id.* at ¶¶ 11–15. Plaintiff further alleges such calls were not for emergency purposes, and that she did not provide prior express consent to be called. *Id.*

This case is the last in a series of TCPA class action lawsuits brought against Wells Fargo. Doc. No. 20 at 2–6. Class Counsel and other counsel have litigated four other TCPA class action cases[1] against Wells Fargo involving substantially the same claims made by Plaintiff. *Id.*

**II.    Procedural Background**

On October 3, 2014, Plaintiff filed this putative class action complaint, alleging claims for negligent, knowing, and/or willful violations of the TCPA. Doc. No. 1.

On December 22, 2014, Plaintiff filed a motion for preliminary approval of class action settlement. Doc. No. 5. Defendant filed an answer to the Complaint and a response in support of Plaintiff's motion on January 8, 2015. Doc. Nos. 7, 9.

On February 9, 2015, the Court issued an Order certifying a provisional Settlement Class, preliminarily approving the class action settlement, and directing the dissemination of Class Notice. Doc. No. 11. The Court appointed Plaintiff Lillian Franklin as Class Representative, and the Kazerouni Law Group, APC, Hyde and Swigart, and the Law

---

[1] Those cases are: *Masters v. Wells Fargo Bank, N.A.*, 12-cv-00376-SS (W.D. Texas); *Martin v. Wells Fargo Bank, N.A.*, 12-cv-06030 (N.D. Cal.); *Heinrichs v. Wells Fargo Bank, N.A.*, 13-cv-05434 (N.D. Cal.); and *Shehan v. Wells Fargo Bank, N.A.*, 14-cv-0900 (N.D. Alabama).

1    Offices of Douglas J. Campion, APC as Class Counsel.  *Id.*  The parties then commenced

2    providing notice to the Class and proceeded with the claims administration process.[2]

3         Plaintiff filed her motion for attorneys' fees, costs, and an incentive payment on

4    May 20, 2015, and her motion for final approval of class action settlement on July 20,

5    2015.  Doc. Nos. 20, 37.  The Court subsequently granted a joint motion by the parties to

6    extend the objection period and to continue the final approval hearing until August 3,

7    2015.  Doc. No. 25.  Accordingly, the Court vacated the hearing on Plaintiff's motion for

8    attorneys' fees and reset it for the same day.  Doc. No. 35.

9         Five Class Members filed objections to the proposed class action settlement with

10   the Court: Anne L. Card (Doc. No. 22), C. Jeffrey Thut (Doc. No. 23), Douglas Kaye

11   (Doc. No. 28), Crystal Bowen-Poore (Doc. No. 30), and Charmain Schuh (Doc. No. 31).

12   Crystal Bowen-Poore withdrew her objection on July 13, 2015.  Doc. No. 34.  Plaintiff

13   filed a reply to the remaining objections on July 20, 2015, and Anne L. Card and

14   Charmain Schuh withdrew their objections on July 31, 2015.[3]  Doc. Nos. 38, 39, 41.

15        On July 31, 2015, the Court issued a tentative ruling finding that the proposed class

16   action settlement was appropriate for final approval, but that it was unable to determine

17   the reasonableness of Class Counsel's attorneys' fees request without supplemental

18   briefing.  Doc. No. 40.  A hearing was held on Plaintiff's motions on August 3, 2015.

19   Doc. No. 43.  After the hearing, the Court ordered Plaintiff to file a supplemental brief

20   that included additional details regarding Plaintiff's fees request.  Doc. No. 44.  Plaintiff

21   filed her supplemental brief on August 31, 2015.  Doc. No. 46.

22   //

23   //

24   _____

25   [2] The parties subsequently filed a joint motion to correct the Settlement Fund amount listed in the
     Motion for Preliminary Approval of Class Action Settlement based on a clerical error made by the

26   parties.  Doc. No. 12.  The Court granted the joint motion to correct the Settlement Fund amount.  Doc.
     No. 13.

27   [3] Plaintiff filed notices of withdrawal for purported objectors Ishaw Alkhair and Guye E. Reeder, but no
     such objections were filed with the Court.  *See* Doc. Nos. 26, 32.  Instead, these objections appear to

28   only have been filed with the Claims Administrator.  Doc. No. 37-6 at 5.

### III.   The Settlement

#### A.   Settlement Class

This Court previously certified a provisional Settlement Class as follows:

> All cell phone users or subscribers to wireless or cellular service within the United States who used or subscribed to phone numbers to which Wells Fargo placed any calls from November 1, 2009 to September 17, 2014 using any automated dialing technology or artificial or prerecorded voice technology in an effort to collect on a consumer credit card account.

Doc. No. 11 at 2.

The Class is comprised of approximately 4,074,207 Class Members.  Doc. No. 37-6 at 2.

#### B.   Settlement Terms

The Settlement requires Defendant to establish a non-reversionary settlement fund of $13,859,103.80 ("Settlement Fund"), from which the Class Representative incentive payment, Class Counsel's fees and costs, costs of settlement administration, and the Class Member claims will be paid.  Doc. No. 37-2 at 1.  Payments from the Settlement Fund are in the form of a *pro rata* Settlement Check, which will be mailed to each of the Class Members who made a valid and approved claim.  Doc. No. 5-3 at 16.

As of July 20, 2015, there were 107,134 valid timely claims filed by Class Members, 258 valid late claims, and 59 valid claims for exclusion.  Doc. No. 37-6 at 4–5. The Claims Administrator, ILYM Group, Inc., will incur total costs of $2,768,727.56 for administering the claims, including the cost of disbursement.  Doc. No. 37-6 at 7.  Class Counsel seeks $3,464,775.95 in attorneys' fees inclusive of reimbursement costs—25% of the total Settlement Fund.  Doc. No. 46 at 25.  In the alternative, Plaintiff seeks $2,771,820—approximately 20% of the total Settlement Fund.  *Id.*  The sole Class Representative, Lillian Franklin, seeks an incentive award of $1,500.  Doc. No. 20-1 at 1.

Assuming all fees and costs are awarded as requested, the $13,859,103.80 Settlement Fund will be distributed as follows: Class Representative Incentive Award, $1,500; Class Counsel's requested fees, $3,464,775.95; Settlement Administration costs, $2,768,727.56.  This leaves $7,624,100.29 as the Net Settlement Fund available to pay

Class Members.  Accordingly, each of the 107,134 Class Members with valid timely claims will receive approximately $71.16 each.

The Claims Administrator will send Settlement Checks within 40 days after judgment has become final.[4]  Each Settlement Check will be negotiable for 180 days after it is issued, and any funds not paid as a result of an un-cashed Settlement Check shall be paid as a *cy pres* award to a recipient to be agreed to by the parties, subject to Court approval.  Doc. No. 5-3 at 12, 16.

## DISCUSSION

### I.     Motion for Final Approval of Class Action Settlement

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a).  Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3).

### A.     Legal Standard

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Courts consider several factors in determining whether a proposed settlement is "fair, adequate and reasonable" under Rule 23(e), including: (1) the strength of the case; (2) the risk, expense, complexity and likely duration of further litigation and the risk of

---

[4] Per the terms of the Settlement Agreement, after judgment becomes final Defendant has 10 days to provide the Settlement Funds to the Claims Administrator.  Doc. No. 5-3 at 11.  The Claims Administrator must then distribute the funds to the class members within 30 days.  Doc. No. 5-3 at 12.

maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

> **B.    Analysis**

> **1.    Strength of the Case, Risk, Expense, Complexity, and Likely Duration of Further Litigation**

To determine whether the proposed settlement is fair, reasonable, and adequate, a court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000). In other words, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)). In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush." *Id.*

Plaintiff contends that her case would have faced several issues if the case were to proceed on the merits, including individual issues related to arbitration, prior express consent, whether the equipment used to place calls was unlawful under the TCPA, whether the calls were made to cellular telephones or land lines, and whether individual claims might be offset by any outstanding debts owed to Wells Fargo. Doc. No. 37-1 at

9. Because of these issues, the case may be complex if litigated. Accordingly, this factor weighs in favor of approving the settlement.

### 2. Risk of Maintaining Class Action Status

A court may reconsider certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

Although Defendant has stipulated to class certification for settlement purposes, Defendant insists that this action would not be amenable to class certification if litigated and that individual issues would predominate "because of the many different ways that a 'called party' may provide their consent to receive calls and because of the difficulty in ascertaining the owner/subscriber of phone lines." Doc. No. 7 at 1. Plaintiff also recognizes that some courts in this District have denied motions for class certification in TCPA cases. Based on the parties' representations, it appears there is some risk that the Class would either not be certified or that something may arise before trial that would require the Court to decertify a class. Accordingly, this factor weighs in favor of settlement.

### 3. Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV, Inc.*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982)).

//

//

Plaintiff makes the following representation in her moving papers:

> The Settlement was reached only after class counsel's thorough investigation and analysis of the factual and legal issues involved. . . . In addition, Defendant also provided Plaintiff with informal discovery relating to the proposed Class and the calls made as well as responding to formal confirmatory discovery about the number of class members, including the deposition of Wells Fargo's Person Most Knowledgeable about the class membership and its determination, all to confirm that the settlement was fair, reasonable and adequate.

Doc. No. 37-1 at 11.  In addition to informal settlement discussions, On October 13, 2014, Plaintiff attended a formal mediation session with Wells Fargo conducted by the Honorable Irma E. Gonzalez (Ret.) of JAMS.  Doc. No. 37-1 at 4.

Based on the parties' representations, it appears the Settlement Agreement resulted from arms-length negotiations and was not the result of collusion.  Although formal discovery was not conducted in this case, Class Counsel claims to have conducted discovery in related cases involving the same Defendant over the same issues.  Accordingly, this factor supports approval.

### 4.    Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *DIRECTV*, 221 F.R.D. at 527 (internal citation and alteration omitted).  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Id.* (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

Pursuant to the Settlement Agreement in this case, Defendants must establish a non-reversionary Settlement Fund of $13,859,103.80, from which the Class Representative incentive payment, Class Counsel's fees and costs, costs of settlement administration, and the Class Member claims will be paid.  The sole Class Representative, Lillian Franklin, has applied for an incentive award of $1,500.  Class

Counsel seeks $3,464,775.95 in attorneys' fees. The Claims Administrator will incur total costs in the amount of $2,768.727.56 for settlement administration. Assuming these fees and costs are approved as requested, the net Settlement Fund available to pay class members is $7,624,100.29. As of July 20, 2015, the Claims Administrator has approved 107,134 timely claimants, resulting in a pro rata payment of approximately $71.16 per class member.

Plaintiff asserts that "this settlement represents an outstanding result for Class Members, particularly because the damages are purely statutory in that Class Members have not suffered any out-of-pocket losses or other economic harm." Doc. No. 37-1 at 10. Plaintiff further asserts that this payment is in "the range of acceptable results in a TCPA class action," and that "obtaining a nearly $14 million settlement for the Class to divide is an exemplary settlement." Doc. No. 37-2 at 5.

A review of similar cases in this district and in other courts demonstrates that the recovery obtained by class members in this case is not exceptional, but is within the usual range for TCPA class action settlements. *See Knutson v. Schwan's Home Serv., Inc*., No. 3:12-CV-00964-GPC, 2014 WL 3519064, at *4–5 (S.D. Cal. July 14, 2014) (approving TCPA settlement where each class member eligible for a $20 settlement check and an $80 merchandise voucher); *Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40); *Gutierrez v. Barclays Grp.*, No. 10-cv-1012-DMS, ECF Nos. 54, 58 (S.D. Cal. Mar. 12, 2012) (approving TCPA settlement where each class member eligible for $100 credit or settlement check); *Adams v. AllianceOne*, No. 08-cv-0248-JAH, ECF Nos. 116, 137 (S.D. Cal. Sept. 28, 2012) (approving TCPA settlement where each claimant received approximately $40); *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290-BEN, ECF No. 96 (S.D. Cal. June 28, 2013) (approving TCPA settlement where 120,650 claimants received $84.42 each); *Bellows v. NCO Fin. Sys., Inc.*, 07-cv-1413-W, ECF Nos. 53, 54 (S.D. Cal. July 13, 2009) (approving TCPA class settlement where each claimant received $70). Here, class members are expected to

recover approximately $71.16 each.  Accordingly, this factor supports approval of the settlement.

**5.      Whether the Class Has Been Fairly and Adequately Represented**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528.

Class counsel assert that they are familiar with the specific facts and issues arising in this case, and claim to have considerable expertise in TCPA and class action litigation. For example, the Kazerouni Law Group has litigated over 300 consumer class actions.  *See* Doc. No. 5-2 at 7.  It appears the Class was adequately represented by competent counsel, so this factor supports approval of the settlement.

**6.      Reaction of the Class to the Proposed Settlement**

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.  *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 836–37 (9th Cir. 1976).  The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class did not oppose settlement).

Here, Plaintiff represents that there have been 68 requests for exclusion from the settlement.  There were also 5 objections to the settlement that were filed with the Court, three of which were subsequently withdrawn.  The low number of objections in relation to the Class as a whole supports the adequacy of the settlement.  *See  In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (finding court did not err in approving class action

1    settlement where "only a handful of objectors" in a class of 5,400 objected at the fairness

2    hearing).  Accordingly, this factor favors approval of the settlement.

3    **C.    Conclusion**

4          For the reasons set forth above, the Court finds that the proposed class action

5    settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure

6    23(e), and therefore **GRANTS** Plaintiff's motion for final approval of class action

7    settlement, Doc. No. 37.

8    **II.    Motion for Award of Attorneys' Fees, Costs, and Incentive Award**

9          Plaintiff seeks attorneys' fees and costs of $3,464,775.95, or approximately 25% of

10   the Settlement Fund.[5]  During the fairness hearing the Court raised concerns about the

11   amount of attorneys' fees sought in light of the speedy settlement obtained in this matter

12   and the lack of detailed billing records.  Accordingly, the Court ordered Plaintiff to

13   provide supplemental briefing on the issue of attorneys' fees.  Doc. No. 44.

14   **A.    Relevant Law**

15         Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action,

16   the court may award reasonable attorney's fees and nontaxable costs that are authorized

17   by law or by the parties' agreement."  A court has discretion to calculate and award

18   attorneys' fees using either the lodestar method or the percentage-of-the-fund method.

19   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

20         In the Ninth Circuit, 25% of the gross settlement amount is the benchmark for

21   attorneys' fees awarded under the percentage-of-the-fund method.  *Vizcaino*, 290 F.3d at

22   1047–48.  "The benchmark percentage should be adjusted, or replaced by a lodestar

23   calculation, when special circumstances indicate that the percentage recovery would be

24   either too small or too large in light of the hours devoted to the case or other relevant

25   factors."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th

26   _____

27   [5] Class counsel's fee request "includes Class Counsel's costs despite relevant case law for the
     proposition that costs may be awarded in addition to Class Counsel's attorneys' fees."  Doc. No. 20-1 at

28   23.

Cir. 1990).  The Ninth Circuit has identified a number of factors that may be relevant in determining whether the amount of an award is reasonable, including:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048–50.  Regardless of which approach is used, the ultimate inquiry is whether the end result is reasonable.  *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit encourages courts to guard against unreasonable results by cross-checking the percentage-of-the-fund results against the lodestar method.  *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011).

### B.    Attorneys' Fees

On August 6, 2015, the Court ordered Plaintiff to provide supplemental briefing on the issue of attorneys' fees.  Doc. No. 44.  Among other things, the Court was concerned about whether an award of attorney's fees for work performed in other litigation by attorneys other than Class Counsel was permissible.  The Court was also troubled by representations made by Class Counsel that did not appear to accurately reflect the work completed in this case.  For instance, in a declaration accompanying the motion for attorneys' fees attorney Abbas Kazerounian states that he "draft[ed] and fil[ed] the amended complaint," even though no amended complaint was filed in this matter.  Doc. No. 20-2 at 12.  Mr. Kazerounian also asserts that he "was forced to devote many hours to Motion practice on this matter.  Said hours were necessary to prepare a Joint Motion re Determination of Discovery Dispute," even though there was no such motion filed in this case.  Doc. No. 20-2 at 12.

The supplemental briefing provided by Plaintiff also appears to contain some inaccuracies.  For instance, in reviewing billing entries made by Class Counsel, the Court notes that attorneys Abbas Kazerounian and Joshua Swigart purportedly spent a collective 13.4 hours reviewing and researching the thirteen line Tentative Order issued on July 31, 2015 in advance of the Final Approval Hearing (Doc. No. 40).  *See* Doc. No.

46-11.  The Tentative Order only stated the Court's initial finding that the proposed settlement was appropriate for final approval, and indicated that the Court was "unable to determine the reasonableness of Class Counsel's Attorneys' Fees request without supplemental briefing."  Doc. No. 40.  Therefore, it is unclear what review or research could have been conducted regarding that Order.

Nevertheless, pursuant to the factors set forth by the Ninth Circuit, it does not appear that there is a significant reason to depart from the 25% benchmark in this instance.  The results achieved for the class in this matter are comparable to those obtained in other TCPA class action cases, and the skill and quality of Class Counsel's work in this matter appears to have been adequate.  Class Counsel represents that this action is the culmination of a series of cases stretching back to *Masters v. Wells Fargo Bank, N.A.*, in 2012, and that the work performed in the earlier cases was necessary to achieve the speedy settlement obtained here.  All of the cases were litigated on a contingency basis, and necessarily required Class Counsel to forgo other work and assume some risk of a potentially unfavorable outcome.  Accordingly, the Court finds that Plaintiff's request for an award of attorneys' fees and costs is appropriate and reasonable under these circumstances and **APPROVES** an award in the total amount of $3,464,775.95.

### C.    Claims Administrator's Costs

The Claims Administrator, ILYM Group, Inc., will incur total costs of $2,768,727.56 for administering the claims in this matter, including the cost of disbursement.  Doc. No. 37-6 at 7.  These costs appear to be fair and reasonable, therefore the Court **APPROVES** the Claims Administrator's costs.

### D.    Incentive Award

"Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class."  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977).  Courts should ensure that an incentive award is not based on fraud or collusion.  *Id.*

The only class representative in this case is Plaintiff Lillian Franklin.  Ms. Franklin appears to have been actively involved with the case since its inception, including reviewing court filings, communicating with Class Counsel, and reviewing and approving the settlement.  Doc. No. 20-11.  This award does not appear to be the result of fraud or collusion.  Accordingly, the Court **APPROVES** the $1,500 service award as reasonable.

## CONCLUSION

For the reasons set forth above, the Court finds that the proposed class action settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e), and therefore **GRANTS** Plaintiff's motion for final approval of class action settlement (Doc. No. 37).  The Court further **GRANTS** Plaintiff's motion for attorneys' fees, costs, and an incentive award (Doc. No. 20) and **APPROVES** Plaintiff's requests as follows:

1.   Class Counsel shall receive an award for attorneys' fees and costs in the amount of $3,464,775.95;

2.   The Claims Administrator shall receive costs in the amount of $2,768,727.56; and

3.   Class Representative Lillian Franklin shall receive an incentive award in the amount of $1,500.

## JUDGMENT AND ORDER OF DISMISSAL

The Court **APPROVES** the settlement and **ORDERS** the parties to implement the Settlement Agreement according to its terms and the conditions set forth in this Order.

1.   JURISDICTION:  The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto.

2.   CLASS MEMBERS:  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), this matter is hereby finally certified, for settlement purposes only, as a class action on behalf of the following Class (also referred to as "Settlement Class"):

> All cell phone users or subscribers to wireless or cellular service within the United States who used or subscribed to telephone numbers to

1
2
3
which Wells Fargo placed any calls from November 1, 2009 to September 17, 2014 using any automated dialing technology or artificial or prerecorded voice technology in an effort to collect on a consumer credit card account.

4
(Members of the Class are referred to as "Class Members.")

5
6
7
8
3.    CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT: Pursuant to Fed. R. Civ. P. 23, the Court finally certifies Plaintiff Lillian Franklin as the Class Representative and Hyde & Swigart, the Kazerouni Law Group, APC, and the Law Office of Douglas J. Campion as Class Counsel.

9
10
11
12
13
14
15
16
17
18
4.    NOTICE AND CLAIMS PROCESS:  Pursuant to the Court's Preliminary Approval Order, the Claims Administrator has complied with the approved notice process as confirmed in its declaration filed with the Court.  The form and method for notifying the Class Members of the Settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances.  The Court finds that the notice process was clearly designed to advise the Class Members of their rights.  Further, the Court finds that the claim process set forth in the Settlement Agreement was followed and that the process was the best practicable procedure under the circumstances.

19
20
21
5.    FINAL CLASS CERTIFICATION:  The Court again finds that the Settlement Class satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, namely:

22
23
(a) The Class Members are so numerous that joinder of all of them in one lawsuit would be impracticable;

24
25
(b) There are questions of law and fact common to the Class Members, which predominate over any individual questions;

26
27
(c) The claims of Plaintiff are typical of the claims of the Class Members;

28

1

2

    (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all the Class Members; and

3

4

5

6

    (e) Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

7

8

9

10

11

12

13

14

15

6.   SETTLEMENT TERMS:  The Settlement Agreement, which has been filed with the Court (Doc. No. 5-3) and shall be deemed incorporated herein, and the proposed Settlement are finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court. Defendants shall pay a non-reversionary "all in" cash sum in the total amount of $13,859,103.80 (the "Settlement Fund"), and Class Members who submitted a valid claim form will receive a pro-rata share of the Settlement Fund less the costs of notice and claims administration, the award of attorneys' fees and costs, and the incentive award to the named plaintiff.

16

17

18

7.   Upon the cessation of the extended claims period, a total of 107,134 valid and timely claims were received.  As a result of this settlement, each of these 107,134 consumers will receive $71.16.

19

20

21

22

23

8.   ATTORNEYS' FEES AND COSTS:  The Court approves the requested award of attorneys' fees in the amount of $3,464,775.95 for attorneys' fees and litigation costs, which represents 25 percent of the Settlement Fund. This amount is fair, reasonable, and adequate to compensate Class Counsel for the work done in this case and the risks assumed in initiating and prosecuting it.

24

25

26

9.   NOTICE AND ADMINISTRATION COSTS:  The Court also approves the costs spent on notice to the Class and the administration of the settlement in the amount of $2,768,727.56 to the Claims Administrator.

27

28

10. <u>INCENTIVE AWARD TO THE CLASS REPRESENTATIVE</u>:  The Court approves the incentive award in the amount of $1,500 to Plaintiff Lillian Franklin for Plaintiff's service as the Class Representative in the Action.

11. <u>EXCLUSIONS AND OBJECTIONS</u>: The consumers listed in Exhibit D attached to the Declaration of Lisa M. Mullins shall be excluded from the Class.

12. In addition, the Class Members were given an opportunity to object to the settlement. Daniel Darnell, Douglas Kaye, and C. Jeffrey Thut objected to the Class settlement. However, these objections are **OVERRULED**.

13. <u>RELEASE OF CLAIMS AND DISMISSAL OF LAWSUITS</u>: The Class Representative, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Agreement.  Pursuant to the release contained in the Settlement Agreement, the Released Claims are compromised, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.

14. This Order is not, and shall not be construed as, an admission by Defendants.

15. Without affecting the finality of this Final Judgment and Order of Dismissal with Prejudice, the Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Actions and/or Settlement Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Order.

16. The Court hereby **DISMISSES** this action with prejudice.

    **IT IS SO ORDERED.**

Dated:  January 29, 2016

Hon. Michael M. Anello
United States District Judge